595 So.2d 1255 (1992)
REGIONAL TRANSIT AUTHORITY
v.
Sherman LEVEY, d/b/a Pokorny's Shoe Store, et al.
HANNAH DANSKY ENTERPRISES, INC., d/b/a The Shoe Box
v.
Sadie J. DANNENBAUM, Widow of Ralph P. Levey, Sr., Douglas P. Levey, Mrs. Nan Levey, Ralph P. Levey III, Robert Levey and Travelers Insurance Company.
Nos. 91-CA-0529, 91-CA-0530.
Court of Appeal of Louisiana, Fourth Circuit.
March 17, 1992.
Rehearing Denied April 22, 1992.
*1256 Harry D. Hoskins, III, Michael Wanek, Hulse, Nelson & Wanek, New Orleans, for appellant.
W.K. Christovich, Christovich & Kearney, New Orleans, for appellee.
Before BARRY and CIACCIO, JJ., and GULOTTA, J., pro tem.
CIACCIO, Judge.
Hannah Dansky Enterprises, Inc., d/b/a "The Shoe Box", plaintiff-appellant, appeals the dismissal of its legal malpractice suit on an exception of prescription.

FACTS
On December 6, 1984 a fire destroyed Pokorny's Shoe Store, 124 St. Charles Avenue, and damaged adjacent businesses. Plaintiff operated a women's shoe store adjacent to the Pokorny building at 126 St. Charles Avenue. Meyer The Hatter was located on the other side of the Porkorny building and Hotel Le Meridien is behind the Pokorny building.
The Pokorny building was owned by Sadie J. Dannenbaum, widow of Ralph P. Levey, Sr., Douglas P. Levey, Mrs. Nan Levey, wife of Malcolm A. Coco, Nancy Levey, Ralph P. Levey III, and Robert Levey (Owners). The building was leased to M. Pokorny & Sons, Ltd. (Pokorny's) who operated a shoe store on the lower two floors. Douglas Levey, a co-owner of Pokorny's, was Chairman of the Board, agent for service of process, an employee and stockholder of Pokorny's. Pokorny's and the building owners are insured under one liability policy issued by Travelers Insurance Company.
Seven lawsuits were filed as a result of the fire. The first suit was filed on November 27, 1985 by the Regional Transit Authority (RTA) against "Sherman Levey d/b/a Pokorny's Shoe Store" and Travelers. On December 3, 1985 the Milling, Benson law firm, defendant herein, filed *1257 suit on behalf of Samuel H. and William A. Meyer, owners of the Meyer Building, and Meyer The Hatter, Ltd. naming the individual owners of the Pokorny building and Travelers as defendants. On December 4, 1985 Milling, Benson filed a similar suit against the same defendants on behalf of Hotel Le Meridien's insurer. On December 4, 1985 Milling, Benson filed suit on behalf of plaintiff against the Pokorny building owners and Travelers. According to a notation on plaintiff's check dated December 4, 1986 and made payable to Milling, Benson, the law firm was employed to "instigate... [a] law suit [sic] by 12/6/85 against Pokorny's." The three suits filed by Milling, Benson did not name Pokorny's as a defendant.
On December 23, 1985 the seven lawsuits were consolidated.
On January 28, 1986 Milling, Benson wrote a letter to plaintiff advising that the firm was withdrawing as counsel and recommended Bienvenu, Foster, Ryan & O'Bannon who represented several parties in the pending litigation. Bienvenu, Foster was unable to represent plaintiff so plaintiff retained Herman, Herman, Katz & Cotlar who enrolled as counsel on September 11, 1986. On September 14, 1987 Harry Hoskins became counsel and he associated Michael Wanek of Hulse, Nelson & Wanek.
On April 8, 1988 Mr. Hoskins filed an amended petition which added "Pokorny and Sons, Ltd." and Travelers as defendants. The amended petition alleged that Pokorny's, as lessee, was solidarily liable with the owners of the Pokorny building; alternatively, plaintiff claimed that Pokorny's was solely liable. On April 26, 1988 Pokorny's answered and averred that the claim against Pokorny's had prescribed.
In a letter to Judge Garvey dated November 18, 1988 Mr. Hoskins concluded that "there was no basis for a claim against the owners and, as a result, the solidary liability exception for interruption or prescription on the claim against Pokorny was no longer valid." That is, according to Mr. Hoskins, the suit against Pokorny's had prescribed. Mr. Hoskins' opinion was based on a deposition given by Douglas Levey in an unrelated case which was brought to Mr. Hoskins' attention on June 17, 1988.
Plaintiff alleges that in July of 1988 its claims against Pokorny's, the building owners and Travelers were settled for less than the amount of its damages because Milling, Benson failed to timely file suit against Pokorny's.
On August 24, 1988 plaintiff filed a second amended petition which named Milling, Benson and its insurer, ALAS, as defendants. Plaintiff claims that Milling, Benson committed malpractice by failing to timely sue Pokorny's, the lessee.
Milling, Benson and ALAS filed exceptions of prescription which were maintained by the trial court, thereby dismissing plaintiff's suit. In its reasons for judgment the court stated:
Applying the doctrine of contra non valentem, the one year statute of limitations of C.C. art. 3492 began to run on any malpractice action against the Milling law firm ("Milling") on the date (11 September 1986) Nahum Laventhal and the Herman, Herman & Cotlar law firm became counsel of record for the plaintiff, Hannah Dansky Enterprises, Inc. Milling withdrew representation in February 1986. Laventhal and the Herman law firm became the plaintiff's agent when they enrolled. An attorney-at-law is the agent for his client. Thus the Herman law firm's failure to join Pokorny's, Inc. (although Pokorny's insurer, Travelers was named) formally insulates Milling. That is to say, their knowledge of the facts and their action or inaction is imputed to the plaintiff. Milling was not joined as a party-defendant until 24 August 1988. Such is more than one year after the date Milling withdrew as counsel and more than one year after the date Hannah Dansky Enterprises, Inc.'s new attorney enrolled. Plaintiff's claim is prescribed.
On appeal, plaintiff contends that no damage was sustained for the failure of the Milling firm to sue the lessee until plaintiff settled its claims in June of 1988. Plaintiff argues therefore that its action *1258 against the Milling firm in August of 1988 was brought within the one year prescriptive period. Plaintiff also argues that the trial court erred by applying the one year prescriptive period, rather, the ten year prescriptive period applies because Milling, Benson expressly warranted a specific result.

DISCUSSION
It is well established that an action for legal malpractice normally states a cause of action in tort and is subject to a one year prescriptive period. La.C.C. art. 3492. It is only when an attorney expressly warrants a specific result, or agrees to perform certain work and does nothing, that the cause of action is in contract and subject to the ten year prescriptive period as provided by La.C.C. art. 3499. Gifford v. New England Reinsurance Corporation, 488 So.2d 736 (La.App. 2d Cir.1986).
In the present case, plaintiff submitted an affidavit which stated she was assured by an attorney for Milling, Benson at the time the firm was retained that prescription would be interrupted by the filing of a suit on her behalf. We do not construe this allegation as an express warranty or contract made by Milling, Benson which would give rise to the application of the longer prescriptive period. We conclude that any claims plaintiffs may have against Milling, Benson are governed by a one year prescriptive period.
We next turn to the issue of when prescription began to run. Prescription commences to run from the day injury or damage is sustained. La.C.C. art. 3492 (1983); Braud v. New England Insurance Company, 576 So.2d 466 (La.1991).
The alleged wrongful conduct in this case occurred when the attorney for the Milling firm failed to join the lessee as a party defendant. It is well settled that under the doctrine of contra non valentem, prescription is suspended during an attorney's continuous representation of the client. Malone v. Wright, 525 So.2d 13 (La.App. 3rd Cir.1988). Braud, supra. Plaintiff therefore could not have brought its malpractice suit against the Milling firm until the attorney-client relationship was severed. However, once the Milling firm was dismissed as attorney of record in February of 1986 and the Herman firm enrolled as counsel in September of 1986, plaintiff was free to bring a malpractice claim against Milling.
There is no evidence to indicate plaintiff's previous counsel concealed facts or engaged in fraudulent practices which prejudiced plaintiff's rights to bring a malpractice claim. At this point, plaintiff's new attorneys knew or should have known from the pleadings and the record that M. Pokorny and Sons, Ltd. had not been made a party defendant. This knowledge of the attorney, actual or otherwise, is imputed to the plaintiff. Wilco Marsh Buggies and Draglines, Inc., v. XYZ Insurance Co., Nathan Greenberg, et al, 520 So.2d 1292 (La.App. 5th Cir.1988).
Therefore, we conclude that the one year prescriptive period began to run on September 11, 1986, the date the Herman firm formally enrolled as counsel of record for Hannah Dansky. Plaintiff had until September of 1987 to file a claim against the Milling firm, and plaintiff's legal malpractice action filed on August 24, 1988 has therefore prescribed.
For the foregoing reasons, the judgment of the trial court dismissing plaintiff's claim against the Milling firm and ALAS is affirmed.
AFFIRMED
BARRY, Judge, dissents with reasons.
The majority correctly notes that plaintiff's December 4, 1986 check payable to Milling, Benson was to "instigate ... [a] law suit [sic] by 12/6/85 against Pokorny's." However, the three suits filed by Milling, Benson did not name Pokorny's as a defendant. Nevertheless, the majority concludes that the 10 year prescriptive period does not apply and fails to address the notation on the check.
A legal malpractice action is a delictual claim subject to the liberative prescription of one year, unless a result is expressly *1259 warranted. Recently, in Braud v. New England Ins. Co., 576 So.2d 466 (La.1991), the Supreme Court stated:
There are countervailing factors that may serve to suspend or delay the commencement of prescription. For example, during the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred, prescription will be suspended.
* * * * * *
The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm not yet realizeddoes not suffice to create a delictual action. Until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. A cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.
Braud, at 468 (citations omitted).
In Braud, Braud filed a lender liability claim against Citicorp Industrial Credit Corporation (Citicorp). Citicorp did not answer, so Braud's attorney obtained a default judgment against Citicorp for $4 million. Citicorp filed a nullity action attacking the validity of the default judgment. During trial of the nullity action, Braud, represented by different counsel, settled his claim against Citicorp for $72,000. Braud then filed a malpractice claim based on his former attorney's negligent failure to properly confirm the default judgment. The Court found that "Braud sustained appreciable and actual harm when the validity of his right or asset was attacked by a third party because of the alleged negligence of his former attorney and he was compelled to incur and pay attorney's fees, legal costs and expenditures." Id. at 469. The Court held that prescription began when Citicorp filed the nullity action. Braud's legal malpractice suit was filed more than one year later and there was no basis to interrupt prescription.
Plaintiff, as in Braud, did not sustain harm until the validity of its right or claim was attacked. That is, harm occurred on April 26, 1988 when Pokorny's answered the suit and claimed that prescription had run. Plaintiff's malpractice claim against Milling, Benson was filed August 24, 1988, within the one year prescriptive period.
The trial court committed manifest error by concluding that the legal malpractice claim against Milling, Benson had prescribed. The trial court's ruling should be reversed.