631 So.2d 503 (1994)
Tammy LIRETTE, Individually and on Behalf of Her Minor Son, Houston Back
v.
William A. ROE, et al.
No. 93-CA-0441.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1994.
*504 Brad A. Adams, New Orleans, for plaintiffappellant.
Walter L. Smith, Due, Smith, Caballero, Price & Guidry, Baton Rouge, for defendantappellee.
Before KLEES, LANDRIEU and JOHN A. DIXON, Jr., J. Pro Tem.
KLEES, Judge.
Plaintiff, Tammy Lirette, appeals the judgment of the trial court which maintained defendant's exception of prescription and dismissed plaintiff's legal malpractice action. We reverse and remand.
On October 9, 1989, plaintiff's minor son was injured when he ran into the street and was struck by an automobile. Plaintiff initially retained Morris Bart and Associates as her counsel. Morris Bart recommended that plaintiff settle the matter for $10,000.00, which was the maximum amount available under the driver's liability insurance policy. Plaintiff was unsure about the settlement. She discussed the matter with attorney William Roe, who was a family friend. As a result of this conversation, plaintiff discharged the Morris Bart firm and hired Roe as her new counsel.
Roe filed suit against the driver of the automobile and the driver's insurer on October 17, 1990, more than one year after the date of the accident. Apparently because of some discrepancy in the police report, Roe mistakenly believed that the accident had occurred on October 19, 1989 rather than on October 9th. While the case was pending, Roe was elected to a state judgeship with a term beginning on January 2, 1991.
Upon his election, Roe transferred plaintiff's file to another attorney. It is unclear whether this initial transfer was made to Terry Sercovich or to Timon Webre, two attorneys who share office space. Nevertheless, Timon Webre wound up with the file, and on January 2, 1991, he sent a letter to opposing counsel advising them that he now represented plaintiff Tammy Lirette. On February 21, 1991, Webre received a copy of an exception of prescription in plaintiff's case that was filed by opposing counsel on February 25, 1991. Webre researched the matter, determined that the exception had merit, and went to court on behalf of plaintiff for the hearing on April 17, 1991. The judge sustained the exception from the bench and signed a judgment to that effect on April 23, 1991. Webre, who had had no prior communication with his client, Tammy Lirette, wrote her a letter on April 18, 1991 informing her that her action had been dismissed on the basis of prescription and that she might have a cause of action in malpractice against her former attorney, William Roe. The letter *505 also informed Lirette that she had one year from the discovery of the error to file suit. A few days after receiving this letter, Lirette met with Webre and obtained her entire file, which included copies of the exception of prescription, memorandum in support, and resulting judgment. Within a month or two of her meeting with Webre, Lirette gave the file to attorney Frank Stich of the Sessions, Fishman firm for the purpose of asserting a legal malpractice claim against William Roe. The legal malpractice suit was filed on April 16, 1992.
In response to the malpractice action, defendant Roe filed an exception of prescription. The court sustained the exception and dismissed plaintiff's suit by judgment dated November 12, 1992. Plaintiff has appealed this judgment.
The issue on appeal is whether prescription on the malpractice claim began to run on February 25, 1991, when the exception was filed in the tort case and plaintiff's attorney Webre had notice of it, or on April 18, 1991, when plaintiff herself learned of the exception. The trial court, in written reasons for judgment, stated that the notice to plaintiff's attorney in February 1991 is imputed to plaintiff, regardless of when she received actual notice. We disagree.
Prescription on a legal malpractice claim is one year from the date the alleged act, omission or neglect is discovered or should have been discovered. La.R.S. 9:5605. In the instant case, the alleged malpractice is Roe's failure to file Lirette's tort suit timely. Prescription on a legal malpractice case for failure to file suit timely begins to run when the exception of prescription is filed into court, rather than later when the exception is sustained. Braud v. New England Ins. Co., 576 So.2d 466 (La.1991); Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992); Malone v. Wright, 525 So.2d 13 (La.App. 3d Cir.1988). Therefore, plaintiff's argument that she had no cause of action for legal malpractice prior to the issuance of the judgment maintaining the exception is clearly wrong.
Moreover, we have recently held that notice to a client's attorney, actual or otherwise, is imputed to the client. Regional Transit Authority v. Levey, 595 So.2d 1255, 1258 (La.App. 4th Cir.1992), writ denied, 604 So.2d 996 (La.1992). See also: Wilco Marsh Buggies and Draglines, Inc. v. XYZ Ins. Co., 520 So.2d 1292 (La.App. 5th Cir.1988), writ denied, 522 So.2d 1094 (La.1988). Unless the plaintiff can show that his former attorney concealed facts or engaged in fraudulent practices which prejudiced plaintiff's right to bring suit, prescription begins to run when plaintiff's new attorney knew or should have known from the pleadings and the record that an exception has been made. Regional Transit Authority v. Levey, supra, 595 So.2d at 1258. Therefore, if Timon Webre was representing the plaintiff in February of 1991, prescription on the malpractice case began to run on February 25th when the exception of prescription was filed in the tort case and Webre received a copy of it.
The only remaining question becomes whether there existed a sufficient attorney/client relationship between the plaintiff and Webre in order for Webre's knowledge to be imputed to her. In a prior decision, we described the attorney/client relationship as follows:
Establishment of an attorney-client relationship is adequately proven when it is shown that the advice and assistance are sought and received in matters pertinent to his profession or when the agreement of representation has been made under conditions acceptable to both parties. State v. Green, 493 So.2d 1178 (La.1986); See also McDaniel v. Department of Safety and Permits, 270 So.2d 290 (La.App. 4th Cir. 1972). What is critical is that a person must seek legal advice from a professional legal advisor acting in his capacity as such. Green, supra; 8 Wigmore, Evidence, Sections 2294-2300. The existence of such a relationship turns upon the client's subjective belief that the attorney-client relationship exists. Louisiana State Bar Association v. Bosworth, 481 So.2d 567 (La.1986).
LaNasa v. Fortier, 553 So.2d 1022, 1023-1024 (La.App. 4th Cir.1989), writ denied, 559 So.2d 124 (La.1990).
In the instant case, Lirette testified that sometime after Roe assumed the bench (January *506 2, 1991), she called Roe to find out what was going to happen to her case. Roe told her that he had given her file to another attorney named Terry Sercovich and asked her if she had any objection. She said she did not object. Tammy Lirette then called Terry Sercovich, who told her it was Timon Webre who had her file. She never attempted to contact Webre. Lirette did not recall the exact date of her phone conversation with Sercovich, only that it occurred sometime before she received the letter from Webre on April 18th. Webre confirmed that he never called his client to inform her that he was representing her, and that he had no communication whatsoever with her until he sent the letter on April 18th telling her that her claim had been dismissed.
We do not believe an attorney/client relationship can exist in the absence of any initial communication, either verbal, written or otherwise, between the attorney and the client. Tammy Lirette neither sought Webre's counsel, nor was a party to any agreement with Webre as to his representation of her. Under these circumstances, it would be patently unfair to impute the knowledge of Timon Webre to Tammy Lirette prior to April 18, 1991, the date he first communicated with her. Therefore, we find that prescription on the malpractice action began to run on April 18, 1991, when Lirette discovered Roe's error. The trial court erred in holding that plaintiff's action, filed on April 16, 1992, had prescribed.
Accordingly, for the reasons given, we reverse the judgment of the trial court dismissing plaintiff's action on the basis of prescription, and remand this matter to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DIXON, J., concurs.
DIXON, Judge, concurring.
I agree with the judgment reversing that of the trial court and that prescription on Lirette's malpractice claim began to run on April 18, 1991, when she learned that the trial court had decided her personal injury suit had prescribed. Until then she had no reason to believe otherwise, nor did she have a cause of action until she was damaged, not by an earlier filing of a plea of prescription, but by a judgment on that plea adverse to her. R.S. 9:5605; C.C. 3492, (former C.C. 3537); Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La.1992); Rayne State Bank v. National Union Fire Ins. Co., 483 So.2d 987 (La.1986); Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582 (1910). Any issue of imputation to the client of knowledge of her attorney in this case is irrelevant.