TERRI F. LOVE, Judge.
_[1This appeal arises from defendants’ representation of Huey P. Gibson, et al, in a medical malpractice claim for the wrongful death of their wife/mother Versie Mae Gibson. Plaintiffs assert that defendants committed legal malpractice in advising them to accept an alleged inadequate settlement.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY

On December 2, 1998, Mrs. Versie Mae Gibson (“Mrs. Gibson”) underwent cardiac bypass surgery performed by Raphael Es-cribano, M.D. and Peter Foldes, M.D. (collectively referred to as “physicians”) at Columbia North Monroe Hospital. During the operation, Mrs. Gibson suffered an in-traoperative myocardial infarction as a result of an alleged improper infusion with a cardioplegic solution, which lacked potassium. This infusion allegedly caused Mrs. Gibson to suffer multi-organ failure and resulted in her death.
Mrs. Gibson’s surviving spouse, Huey P. Gibson (“Mr. Gibson”), and their ten surviving children retained the legal services of John Mabrey of the Georgia | abased law firm, William Q. Bird & Associates, P.C.[1] (“the Mabrey Firm”), to represent them in filing a medical malpractice claim for the death of Mrs. Gibson. The Mabrey Firm was referred the case by plaintiffs’ relative, Kenneth Wimberly (“Mr. Wimberly”). The Contingency Fee Contract signed by Mr. Gibson provided:
I [Huey P. Gibson, Sr.] agree to pay William Q. Bird & Associates, P.C., an amount equal or equivalent to thirty percent (30%) of whatever amount may *1180 be recovered or collected if the case is concluded before the Medical Review Board addresses the case; thirty five-percent (35%) of whatever amount may be recovered or collected if the case is concluded after Medical Review Board review, but before the case if filed; and forty percent (40%) of whatever amount may be recovered or collected if the case is concluded after the case if filed up until it is completely and fully resolved, including post-trial appeal
Mr. Gibson also signed an agreement prepared by the Mabrey Firm indicating that for administrative services rendered, Mr. Wimberly, a non-lawyer, would receive five percent (5%) of the gross amount recovered.
On November 8, 1999, the Mabrey Firm engaged the Louisiana firm of Herman, Herman, Katz, and Cotlar, L.L.P.; James C. Klick, a Louisiana licensed attorney and partner of Herman, Herman, Katz, and Cotlar, L.L.P.; and Joseph A. Kott, M.D. (“Dr. Kott”), a board certified neurosurgeon and licensed attorney (all collectively referred to as “the Herman Firm”), to assist with the handling of the Louisiana medical malpractice claim. It was agreed to by both ferns that the Mabrey Firm would maintain sole responsibility for communicating with the Gibsons. Because the profusionist was not considered a qualified health care provider pursuant to the Louisiana Medical Malpractice Act, the litigation was lacomprised of two separate proceedings. The Gibsons maintained their claims of negligence against the profesionist and his employer in the district court.[2] The Gibsons’ claims asserted against the hospital and its physicians proceeded before a Medical Review Panel.[3] In January 2001, during the course of the Medical Review Panel proceeding, settlement negotiations culminated in a $750,000 total settlement offer from the profusionist who administered Mrs. Gibson’s cardioplegic solution during her cardiac bypass procedure. Dr. Kott conveyed this settlement offer to the Mabrey Firm along with his recommendation that the plaintiffs accept the offer. Dr. Kott also conveyed to the Mabrey Firm that he “wanted it made clear to plaintiffs that the Herman Firm did not believe they had a viable claim against the remaining defendants and that acceptance of this offer would be the total amount recovered.”
The Mabrey Firm corresponded with the Gibsons and recommended acceptance of the profusionist’s offered settlement. The Mabrey Firm attached a Settlement Statement reflecting a breakdown of the settlement, fees, and expenses, which indicated that the attorney’s fees were forty percent (40%) and an additional fee of five percent (5%) of the gross amount recovered would be tendered to Mr. Wimberly. The Gibsons returned the Settlement Statement to the Mabrey Firm, unsigned. In March 2001, the Herman Firm contacted the Mabrey Firm and expressed concern that the deadline for the defendants to submit their rebuttal evidence to the Medical Review Panel was approaching and that a panel ruling adverse to the Gibsons on the issue of causation may result in the defendants withdrawing their settlement offer.
| ¿The Mabrey Firm sent the Gibsons Revised Settlement Statements, which reduced the attorney’s fees from forty percent (40%) to thirty-five percent (35%), and requested that they sign and return them via the enclosed Federal Express *1181 envelopes. The Gibsons signed and returned the Revised Settlement Statements to the Mabrey Firm, who, in turn, forwarded the forms to the Herman Firm.
Upon receipt of the settlement proceeds, the Mabrey Firm corresponded with the Gibsons, informing them that before disbursement was possible, they were required to sign and return Releases, which were enclosed. The Mabrey Firm advised the Gibsons that due to the lack of expert witness support, they and the Herman Firm deemed that the claims against the hospital and the physicians lacked merit and if the Gibsons chose to proceed with the remaining medical malpractice claims against the physicians and the hospital, both the Mabrey Firm and the Herman Firm would be unable to continue representing them.
In July 2001, the Herman Firm filed motions to withdraw as counsel of record and forwarded the motions along with the contents of both firms’ files to the Gibsons. Subsequent to the Gibsons receipt of the Motion to Withdraw, plaintiff, Donald Gibson, retained counsel to proceed with their claims against the remaining defendants.
In February 2002, plaintiffs filed a legal malpractice claim against both the Mabrey Firm and the Herman Firm, asserting that (1) the defendants overcharged legal fees; (2) failed to explain the applicable law with respect to sharing attorney’s fees with non-lawyers, and (3) negligently recommended a settlement of their claim for woefully inadequate sums of money. Shortly after the Gibsons filed their legal malpractice claim, the Medical Review Panel convened and found that the evidence was insufficient to support the conclusion that the doctors and the | ^hospital failed to meet the applicable standard of care. They further opined that the profu-sionist, not the physicians, bore the responsibility for properly administering the cardioplegia solution, which resulted in Mrs. Gibson’s death. The Gibsons stipulated that the remaining defendants, the physicians and the hospital, were not legally viable due to no fault of the Mabrey Firm or the Herman Firm.
The Herman Firm filed a motion for partial summary judgment asserting that (1) the Gibsons’ claims were time barred under La. R.S. 9:5605; (2) despite the prescriptive period, the Gibsons cannot enter into a settlement and then recover from their own counsel based on the amount of the settlement; and (3) the plaintiffs offered no evidence of negligence on the part of the Herman Firm, which warranted judgment, as a matter of law, on several of the'Gibsons’ theories of recovery.
The Mabrey Firm also filed a motion ,fpr partial summary judgment mirroring the assertion made by the Herman Firm insofar as Louisiana’s recognition for claims of inadequate settlements and further asserting that the Gibsons offered no evidence of negligence on the part of the Mabrey Firm.
Certifying this judgment as final and appealable pursuant to La. C.C.P. art. 1915(B)(1), the trial court found that the Gibsons’ suit was filed more than one year subsequent to the recommendations made by the Herman Firm. Accordingly, the trial court granted the Herman Firm’s motion for partial summary judgment. The trial court also granted the Mabrey Firm’s motion for partial summary judgment, opining that subsequent to the recommendations of settlement, the Gibsons voluntarily entered into the settlement complained of as “woefully inadequate.” The trial court held that it could not find any loss, damages or negligence for a settlement voluntarily entered into by the Gib-sons. To-wit, the 1 atrial court ruled that no genuine issues as to any material fact exist; that the law and argument are in *1182 favor of the moving defendants in all respects; and that movers are entitled to judgment as a matter of law. The motions for partial summary judgment were therefore granted, dismissing all of the Gibsons’ claims, except those related to the fees charged in the underlying medical malpractice case. The trial court ruled that this claim was a separate, distinct, and minor issue in the case.
Subsequently, the Herman Firm and the Mabrey Firm moved for summary judgment on plaintiffs’ remaining claims of overcharged fees; however, the trial court denied defendants’ motion for summary judgment, finding genuine issues of material fact. Defendants sought supervisory writs challenging the trial court’s judgment denying their motions for summary judgment regarding the issue of separate attorney’s fees. This Court granted supervisory writs and reversed the judgment of the trial court.[4] It is from the trial court’s judgment granting defendants partial summary judgment that the Gibsons appeal, asserting that the trial court committed error.
STANDARD OF REVIEW
The issue before this Court is whether the trial court erred in granting the defendants’ motions for partial summary judgment. Appellate review of the judgment granting or denying a motion for summary judgment or a motion for partial summary judgment, if certified as a final and appeal-able judgment, is de novo.
■ Pursuant to La. C.C.P. art. 966(C)(1), the court shall grant a motion for summary judgment if the motion shows there is no genuine issue of material fact [7and the mover is entitled to judgment as a matter of law. The burden of proof remains with the mover to show that no genuine issue of material fact exists. If however, the mover will not bear the burden of proof at trial, his burden on the motion does not require him to negate all essential elements of the opposing party’s claim. La. C.C.P. art. 966(C)(2). After the mover has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial.

The Herman Firm’s Motion for Partial Summary Judgment

The Herman Firm, in their motion for partial summary judgment, asserted that despite the alleged legal malpractice, pursuant to La. R.S. 9:5605, plaintiffs’ claims against them were perempted. La. R.S. 9:5605 provides, in pertinent part:
No action for damages against any attorney at law.. .whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such action shall be filed at the latest within three years from the date of alleged act, omission, or neglect.
In light of La. R.S. 9:5605, the alleged negligence of the attorney should have been discovered at the time the settlement offer was presented to the plaintiffs. However, the Gibsons assert that the al *1183 leged act, omission, or negligence of the defendants stems from the settlement recommendation, which the Mabrey Firm did not advise them of until February 15, 2001, at the earliest. The Herman Firm asserts that the settlement recommendation was presented in the |sform of a letter sent by facsimile to the Gibsons, through referring counsel, the Mabrey Firm, dated January-19, 2001. Accordingly, because the Gib-sons filed their legal malpractice claim on February 14, 2002, more than one year subsequent to the Herman Firm’s recommendation that the Gibsons accept the pro-fusionist’s offer of settlement, which is the subject of their claims, the Gibsons’ claims are perempted.
The Gibsons also aver that because the arrangement between the Herman Firm and the Mabrey Firm as co-counsel can be characterize as a joint venture, the imputation of knowledge to them once the Ma-brey firm received the Herman Firm’s recommendation for settlement, is without merit. To support a finding that imputation of knowledge to the Gibsons, once the Mabrey firm was given notice of the Herman Firm’s recommendation is without merit, the Gibsons rely on the holding of the Louisiana Supreme Court in McCann v. Todd, 203 La. 631, 638, 14 So.2d 469, 471 (1943). In McCann, citing 33 C.J. at p. 841, the Supreme Court held that “ ‘a joint adventure [sic] has been aptly defined as a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.’ ”
However, McCann is distinct from the case sub judice, insofar as the issue before the Court in McCann involved an action among attorneys for division of fees; whereas, the issue before this Court is not whether the relationship between the Ma-brey Firm and the Herman Firm was that of a joint venture insofar as conflicts between both firms arose as it relates to the division of fees, but whether the two firms’ relationship can be considered a joint venture insofar as imputation of knowledge is affected.
IsThe Herman Firm avers that the Ma-brey Firm was acting as an agent of the Gibsons and therefore the plaintiffs' knowledge of the Herman Firm’s settlement recommendation is imputed to the Gibsons as the principals. The Herman Firm avers that the settlement recommendation was sent to John Mabrey of the Mabrey Firm, counsel for plaintiffs, on January 19, 2001 and in accordance with this Court’s holding in Lirette v. Roe, 93-044, p. 2 (La.App. 4 Cir. 1/13/94), 631 So.2d 503, 505, notice to a client’s attorney, actual or otherwise, is imputed to the client. Id., citing Regional Transit Authority v. Levey, 595 So.2d 1255, 1258 (La.App. 4th Cir.1992). La. C.C. art. 3007 provides:
When the mandatary is authorized to appoint a substitute, he is answerable to the principal for the acts of the substitute only if he fails to exercise diligence in selecting the substitute or in giving instructions.
WTien not authorized to appoint a substitute, the mandatary is answerable to the principal for the acts of the substitute as if the mandatary had performed the mandate himself.
As we address this issue res nova, we find that the relationship between the Ma-brey Firm and the Gibsons was that of attorney-client, where the Mabrey Finn, acting as an agent of the Gibsons, appointed a substitute, the Herman Firm, to act on behalf of the Gibsons. It is evidenced in the record that it was mutually understood by all the parties that the Mabrey Firm would maintain the sole responsibility of communicating with the Gibsons; that in January 2001, the Herman Firm informed referring counsel, the Mabrey Firm, of their endorsement of the accep *1184 tance of the settlement offer made by the profusionist; that the Herman Firm further communicated with the Mabrey Firm that it should be made abundantly clear to the Gibsons that the Herman Firm assessed the claim against the remaining defendants and determined that the Gib-sons would not be successful; |inand that acceptance of the settlement offer made by the profusionist would be the total amount recovered in the Gibson litigation.
Notice to a client’s attorney is imputed to the client. Lirette, 93-0441, p. 2, 631 So.2d at 505. In light of the fact that the Mabrey Firm retained the sole responsibility for all communication with the Gibsons, accordingly, the Mabrey Firm, acting as agent for the Gibsons, was given notice of the settlement recommendation on January 19, 2001. Therefore, we find that prescription commenced to run on January 19, 2001 and certainly no later than the date that the Mabrey Firm received the communication. Because the Gibsons did not file their claim against the Herman Firm until February 14, 2002, asserting that the alleged act, omission, or neglect, committed by the Herman Firm was their recommendation of acceptance of the settlement offer, we do not find that the trial court erred in granting the Herman Firm’s motion for partial summary judgment on the basis of peremption. Our discussion of the perempted period for legal malpractice claims, insofar as the Herman Firm is affected, pretermits discussion as to the remaining assertions made by the Gibsons.

The Mabrey Firm’s Motion for Partial Summary Judgment

The Gibsons also assert that the Mabrey Firm committed legal malpractice in the handling of their representation, by recommending they accept a “woefully inadequate” settlement.
In support of their claims that the Herman Firm, specifically Dr. Kott, failed to properly evaluate their claims, the Gibsons attached the affidavit of Brian E. Crawford (“Attorney Crawford”), an attorney located in Monroe, Louisiana, who opined that the attorneys for the Gibsons were negligent in recommending acceptance of the settlement offer, insofar as the settlement offer did not take into ¡^consideration the survivorship claim the Gibsons may have had against the profu-sionist. Attorney Crawford further opined that Dr. Kott recommended the settlement without adequate evaluation of the Gib-sons’ claims and that both the Herman Firm and the Mabrey Firm failed to communicate their opinion about the claims remaining after the settlement and their intent to withdraw from the case. However, in Attorney Crawford’s affidavit he specifically stated that his opinions do not conclude that the Gibsons are entitled to damages or that his opinion of Dr. Kott’s alleged negligent acts and omissions caused the Gibsons harm.
Although our interpretation of the jurisprudence acknowledges a cause of action for legal malpractice based on improper and negligent settlement of claims, to maintain a legal malpractice claim, a plaintiff must prove that “(1) there was an attorney-client relationship; (2) the attorney was negligent; and (3) that negligence caused plaintiff some loss.” Couture v. Guillory, 97-2796, p. 3 (La.App. 4 Cir. 4/15/98), 713 So.2d 528, 530. Plaintiff bears the burden of proof of each of these elements. Jurisprudence establishes that once a client establishes an attorney-client relationship and negligence on the part of the attorney, the client has made a prima facie case, at which point, the burden shifts to the attorney to prove that his own negligence did not cause a loss to the client. Jenkins v. St. Paul Fire and Marine In *1185 surance Company, 422 So.2d 1109, 1110 (La.1982). Plaintiffs assert that, in light of the affidavit of Attorney Crawford, they established a prima facie case of malpractice (attorney-client relationship and negligence) and under Jenkins the burden must then shift to defendants to prove that their negligence did not cause a loss to plaintiffs.
Although it is undisputed that a client-attorney relationship existed between the parties, the affidavit of Attorney Crawford, relied on by the Gibsons, | ^specifically states that his opinions do not conclude that the Gibsons are entitled to damages or that his opinion of Dr. Kott’s alleged negligent acts and omissions caused the Gibsons harm. The Gibsons assert that the settlement offer they accepted was woefully inadequate. However, after careful review of the record, we do not find that the $750,000 settlement was inadequate, nor do we find that the Gibsons were damaged by the settlement. Absent a finding of loss, damages, or negligence for the settlement signed voluntarily by plaintiffs, we find that no genuine issues as to any material fact exist and that the Mabrey Firm is entitled to judgment as a matter of law.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. The firm’s name subsequently changed to Bird & Mabrey, P.C.

. District court proceedings captioned Huey P. Gibson, et al. v. Baxter Profusion Services, et al., 99-4937.

. Medical Review panel proceedings captioned, Versie Mae Gibson (Deceased), et al. v. Dr. Peter J. Foldes, et al., PCF No. 00-1651.

. 2005-0022, unpub., (La.App. 4 Cir. 3/18/05), writs denied 2005-0980 (La.6/3/05), 903 So.2d 464, and 2005-C-0024, unpub., (La.App. 4 Cir. 3/18/05), writs denied 2005-0981 (La.6/3/05), 903 So.2d 464. The writ Panels consisted of C.J. Armstrong, J. Tobias, and J. Belsome.