999 So.2d 72 (2008)
ST. PAUL FIRE AND MARINE INSURANCE COMPANY
v.
GAB ROBINS NORTH AMERICA, INC., Galloway, Johnson, Tompkins, Burr And Smith, APLC, and Thomas J. Smith.
No. 2008-CA-0331.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 2008.
*73 Timothy W. Basden, Breaud & Meyers, Lafayette, LA, for Plaintiff/Appellant.
Gus A. Fritchie III, Edward W. Trapolin, Irwin Fritchie Urquhart & Moore LLC, New Orleans, LA, for Defendants/Appellees, Thomas J. Smith and Galloway, Johnson, Thompkins, Burr and Smith, APLC.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
PATRICIA RIVET MURRAY, Judge.
This is a legal malpractice action. The plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), appeals the judgment of the trial court granting the motion for partial summary judgment filed by the defendants, Thomas J. Smith, and his law firm, Galloway, Johnson, Tompkins, Burr and Smith, APLC (the "Galloway *74 Firm"), and dismissing the claims against these two defendants. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
This case arises out of an April 5, 1999 automobile accident that occurred in East Baton Rouge Parish. At the time of the accident, Laura Lindsey was driving a vehicle in the center lane of the interstate and traveling in a southerly direction. Laura Lindsey had four guest passengers in her vehicle: Larry Lindsey, Jonathan Lindsey, Jasmine Lindsey, and Malayai Francois. James Thompson, an employee of Corporate Express Delivery Service ("Corporate Express"), was driving a truck on the interstate and traveling in a southerly direction. As Mr. Thompson was trying to change lanes, the rear of his truck struck the vehicle Laura Lindsey was driving.
On April 16, 1999, Laura Lindsey reported the accident to Corporate Express' insurer, St. Paul. She reported that everyone in her vehicle was injured. On that same date, St. Paul received three letters of representation from an attorney, Paul Landry. Mr. Landry stated that he represented Laura Lindsey; Carrie Lindsey, on behalf of the minor, Johnathan Lindsey; and Larry Lindsey, respectively.
On May 27, 1999, St. Paul determined that the claims Laura Lindsey reported were covered under a policy that it issued to Corporate Express that contained a $250,000 self-insured retention. According to the terms of the policy, such claims were required to be sent to a third party adjusting firm, GAB Robins ("GAB"), for adjustment and handling.
On July 15, 1999, St. Paul forwarded the entire claim file on this matter to Sheryl Reynaud, a GAB employee.
On November 2, 1999, Mr. Landry filed suit in St. Mary Parish on behalf of Larry Landry individually. Three defendants were named in this suit (hereinafter the "Larry Lindsey Suit"): the driver of the truck, Mr. Thompson; St. Paul in its capacity as liability insurer of the truck Mr. Thompson was driving; and Patterson Insurance Company ("Patterson"), in its capacity as liability insurer of the vehicle Laura Lindsey was driving.
On November 9, 1999, the Larry Lindsey Suit was served on St. Paul through the Secretary of State.
On December 3, 1999, Mr. Landry filed a second suit in St. Mary Parish on behalf of Laura Lindsey, Jonathan Lindsey, Jasmine Lindsey, and Malayai Francois (hereinafter the "Laura Lindsey Suit"). Named as defendants were Mr. Thompson, St. Paul, and Patterson (the same three defendants as in the Larry Lindsey Suit).
On December 28, 1999, St. Paul was served with the Laura Lindsey Suit.
On January 11, 2000, St. Paul forwarded to GAB a copy of the Laura Lindsey Suit. GAB then forwarded a copy of the suit to Corporate Express for assignment to defense counsel.
On January 20, 2000, Corporate Express retained Mr. Smith of the Galloway Firm to defend the Laura Lindsey Suit.
On January 26, 2000, Mr. Smith sent a letter to Corporate Express confirming that he and his firm had been retained by it to defend St. Paul in the Laura Lindsey Suit.
On January 26, 2000, Mr. Landry forwarded to Mr. Smith demand letters for all four of the plaintiffs in the Laura Lindsey Suit.
On January 31, 2000, the trial court granted Patterson's Motion to Consolidate the two suits, and issued an order consolidating *75 the Larry Lindsey Suit and the Laura Lindsey Suit.
On February 7, 2000, Mr. Smith filed a motion for extension of time on St. Paul's behalf in the Laura Lindsey Suit. On that same date, the trial court granted the motion allowing St. Paul until February 29, 2000 to answer that suit.
On February 14, 2000, Mr. Smith filed an Exception of Improper Venue on St. Paul's behalf in the Laura Lindsey Suit. This exception was set for hearing in March 2000. The hearing was never had because the Laura Lindsey Suit was settled.
On February 17, 2000, a preliminary default was taken in the Larry Lindsey Suit in which no responsive pleadings had been filed by either St. Paul or Mr. Thompson.
Thereafter, Mr. Thompson filed for bankruptcy. As a result of the bankruptcy, all pending actions against Mr. Thompson, including the Larry Lindsey Suit, were stayed.
On February 18, 2000, GAB forwarded its file materials in the Laura Lindsey Suit to Mr. Smith.
On March 10, 2000, Mr. Smith forwarded to Corporate Express his "Outside Counsel's Initial Narrative Report" for defense of the Laura Lindsey Suit.
On August 2, 2000, the parties executed the documents necessary to perfect the settlement of the Laura Lindsey Suit.
On February 14, 2003, Mr. Landry, in his capacity as Larry Lindsey's counsel, sought relief from the automatic stay in Mr. Thompson's pending bankruptcy proceeding.
On March 24, 2003, the bankruptcy judge issued a consent order granting limited relief from the stay, which permitted Larry Lindsey to proceed with his suit against St. Paul.[1]
On February 14, 2008, Mr. Landry filed a Motion to Fix Trial in the Larry Lindsey Suit and faxed a copy of this motion to Mr. Smith, who Mr. Landry presumed was St. Paul's counsel.
On February 20, 2003, the Clerk of Court in St. Mary Parish sent a Notice of Fixing Case for Trial in the Larry Lindsey Suit to Mr. Smith.
On March 13, 2003, Mr. Smith sent a letter to Mr. Landry as well as the attorney for Patterson in which he stated:
"Please be advised that we are no longer involved in the above-referenced matter. In that regard, please remove us from your mailing list."
On April 16, 2003, Mr. Lindsey took a second preliminary default against Mr. Thompson and St. Paul.
On July 17, 2003, the trial court signed both an order of dismissal in the Laura Lindsey Suit, dismissing the suit with prejudice, and an order in the Larry Lindsey Suit dismissing his claim against Patterson without prejudice. On that same date, a bench trial was held in the Larry Lindsey Suit at which Larry Lindsey, through his attorney Mr. Landry, appeared and presented evidence in support of the default judgment against Mr. Thompson and St. Paul. Based on the record, the trial court confirmed a default judgment against Mr. Thompson and St. Paul. As reflected in the *76 written judgment rendered on August 6, 2003, the trial court found Mr. Thompson to be 100% at fault and awarded Larry Lindsey damages totaling $221,675.46.
On August 27, 2003, after learning of the default judgment,[2] St. Paul filed a Motion for New Trial, which the trial court denied on November 25, 2003. From that judgment, St. Paul appealed. On appeal, it asserted as its sole assignment of error that the trial court erred in rendering judgment against it under an alleged policy of insurance that was not introduced into evidence at trial and when other evidence in the record refutes the claim of coverage. The First Circuit Court of Appeal, in an unpublished opinion, affirmed the trial court's judgment. Lindsey v. Thompson, et al., 04-0478, 2005 WL 902097 (La.App. 1 Cir. 3/24/05)(unpublished).
On March 8, 2004, St. Paul filed the instant suit against GAB, the Galloway Firm, and Mr. Smith for damages resulting from the alleged breach of the defendants' professional duties. St. Paul's claim against Mr. Smith and the Galloway Firm is based on their failing to communicate vital information regarding Larry Lindsey's claims that they received during the course of the litigation and their allowing the default judgment to be taken.[3] In response, Mr. Smith and the Galloway Firm filed an exception of no right of action and alternatively a motion for summary judgment.
On December 20, 2007, the trial court found there was no genuine issue of material fact and thus granted summary judgment dismissing St. Paul's claims against Mr. Smith and the Galloway Firm with prejudice. The trial court also certified the judgment as final for purposes of an appeal under article La. C.C.P. art. 1915(B). This appeal followed.

STANDARD OF REVIEW
On appeal, the standard of review of a trial court's decision granting summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 230; Potter v. First Federal Savings & Loan Ass'n of Scotlandville, 615 So.2d 318, 325 (La.1993). Appellate courts ask the same questions as do trial courts in determining whether summary judgment is appropriate. Those questions are whether there is any genuine issue of material fact, and whether the mover-appellee is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the applicable substantive law. Id.
The governing provision when (as in this case) the mover is not the party that will bear the burden of proof at trial is La. C.C.P. art. 966 C(2), which provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements *77 of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966 C(2). Appellate courts are guided by the Legislature's admonition that "[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action" and that "[t]he procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966 A(2).

DISCUSSION
In order to prevail on a legal malpractice claim, the plaintiff must establish the following three elements: (i) an attorney-client relationship, (ii) the attorney was negligent in his representation of the client, and (iii) that negligence caused plaintiff loss. Plaintiff bears the burden of proof of each of these elements. Failure to prove one of these elements is fatal to the claim. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129; Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972); Francois v. Reed, 97-1328, p. 4 (La.App. 1 Cir. 5/15/98), 714 So.2d 228, 229-230.
The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. Louisiana State Bar Association v. Bosworth, 481 So.2d 567, 571 (La.1986); Francois v. Andry, 05-0388 (La.App. 4 Cir. 4/5/06), 930 So.2d 995. However, a person's subjective belief that an attorney represents him must be reasonable under the circumstances. Exhibition Partner, L.L.P. v. King, LeBlanc & Bland, L.L.P., 03-580 (La.App. 4 Cir. 3/10/04), 869 So.2d 934; Williams v. Roberts, 06-169 (La.App. 3 Cir. 5/31/06), 931 So.2d 1217. The requirement that the belief be reasonable is an objective standard. "The claimant's subjective belief does not establish an attorney-client relationship unless the lawyer reasonably induced that belief." Ronald E. Mallen and Jeffrey M. Smith, 1 Legal Malpractice § 8:3 (2008 ed.)("Legal Malpractice"). For this reason, an attorney client relationship cannot exist in the absence of any initial communicationverbal, written, or otherwisebetween the attorney and the client. Lirette v. Roe, 93-0441 (La.App. 4 Cir. 1/13/94), 631 So.2d 503 631 So.2d 503, 506.
In the Williams case, the trial court granted the attorney's motion for summary judgment dismissing the malpractice claim against him because the plaintiffs could not establish an attorney-client relationship. In that case, the plaintiffs were members of a limited liability company ("LLC"). The defendant-attorney was retained by the managing member of the LLC to draft documents to create the LLC. The defendant-attorney moved for summary judgment on the basis that he was not retained to represent the plaintiffs. The plaintiffs opposed the motion with their own affidavits stating that at no time were they told the defendant did not represent them or that they should get their own counsel and that they reasonably believed the defendant represented them. Affirming the summary judgment, the court of appeal noted that there was no evidence other that the affidavits attesting to the plaintiffs' belief that the defendant represented them tending to show the existence of an attorney-client relationship. The court further reasoned that although the standard for determining if such a relationship exists turns largely on the prospective client's subjective belief that it *78 does, "a person's subjective belief that an attorney represents him must be reasonable under the circumstances." Williams, 06-169 at p. 5, 931 So.2d at 1220-21. The court found no issue of material fact on the issue of the existence of an attorney-client relationship.
Likewise, we conclude in this case that no issue of material fact exists on this issue. Although Mr. Smith and the Galloway Firm were retained by Corporate Express to represent St. Paul in the Laura Lindsey Suit, the scope of the retention was limited to that suit. This limitation was expressed in the correspondence between Mr. Smith and Corporate Express regarding the services Mr. Smith and the Galloway Firm were retained to provide. This limitation is evidenced in the pleadings that Mr. Smith filed. Although he filed a motion for an extension of time and a venue exception in the Laura Lindsey Suit, Mr. Smith took no action and made no appearance in the Larry Lindsey Suit.
As in the Williams case, the sole evidence St. Paul offers that tends to establish an attorney-client relationship regarding the Larry Lindsey Suit was an affidavit of its employee attesting to St. Paul's reasonable belief that Mr. Smith would defend all the claims arising out of the accident, including Larry Lindsey's claim. St. Paul, however, acknowledges that it was unaware that the Larry Lindsey Suit was filed until it was served with the default judgment in that matter. St. Paul thus could not have communicated with Mr. Smith or the Galloway Firm regarding their handling the Laura Lindsey Suit as it was unaware of that suit. Consequently, St. Paul could not have been induced by any communication with Mr. Smith or the Galloway Firm to believe that they were represented by them in the Larry Lindsey Suit. Although it is undisputed that Mr. Smith and the Galloway Firm represented St. Paul in the Laura Lindsey Suit, an attorney's "work on a particular matter or transaction does not create an attorney-client relationship for other affairs of the client." Legal Malpractice § 8:2 (citing Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (1972)). We thus find St. Paul failed to establish the existence of an attorney-client relationship between it and Mr. Smith and the Galloway Firm as to the Larry Lindsey Suit.
St. Paul also argues that, given the unique circumstances of this case, the trial court erred in finding Mr. Smith had no duty to communicate with St. Paul regarding matters he learned during its representation of St. Paul in the Laura Lindsey Suit. Particularly, St. Paul contends that Mr. Smith learned of the following matters that he had a duty to communicate to it: (i) the existence of the Larry Lindsey Suit, (ii) the consolidation of the Larry Lindsey Suit with the Laura Lindsey Suit, (iii) the alterations by Mr. Landry to the settlement agreement documents to reserve Larry Lindsey's rights to pursue his individual claim (which was being asserted in the then pending Larry Lindsey Suit),[4] and (iv) the setting of the Larry Lindsey suit for trial. St. Paul argues that Mr. Smith's failure to communicate these facts to it was a violation of his duty under Rule of Professional Conduct 1.4, which requires a lawyer to maintain prompt and appropriate communications with its client as to the *79 status of the matter. Mr. Smith and the Galloway Firm counter that the duty under Rule 1.4 pertains to the case in which an attorney is retained. They contend that they had no duty to communicate to St. Paul these matters pertaining to the Larry Lindsey Suit in which they were not retained.
Addressing St. Paul's argument regarding Mr. Smith having a duty, the trial court took notice based on his own extensive legal experience that the assignment of defense litigation to law firms frequently involves corporate politics in the allocation of various lawsuits to law firms often on a rotating basis. The trial court reasoned that Mr. Smith could have no duty to St. Paul until he was retained to represent it in the Larry Lindsey Suit. Given that Mr. Smith and the Galloway Firm were not retained to represent anyone in the Larry Lindsey Suit, the trial court rejected St. Paul's argument regarding a duty. We agree.
Given the absence of an attorney-client relationship between Mr. Smith and St. Paul with regard to the Larry Lindsey Suit, we conclude that the trial court correctly granted summary judgment and dismissed St. Paul's claims against Mr. Smith and the Galloway Firm.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The Bankruptcy Court's order provided that "any judgment Larry Lindsey receives against James Thompson will not be asserted or collected, in any manner, from the bankruptcy estate of James Thompson" and that it shall not be construed "to limit, in any way, Larry Lindsey's ability to proceed against and/or collect from the Debtor's Insurers or any other parties made defendant."
[2] In its brief to the First Circuit Court of Appeal in the Larry Lindsey Suit, St. Paul represents that it learned of the default judgment when it was served with a copy of that judgment through the Secretary of State on August 18, 2003.
[3] St. Paul asserts its damages are equal to the amount of the default judgment, $221,675.46, since this amount fell below the deductible amount of $250,000 and thus it should not have been held liable for any amount.
[4] In the settlement agreements, there was a reference to Larry Lindsey both individually and as the undertutor of the minor children plaintiffs. Mr. Landry, counsel for Larry Lindsey, struck through the references to Larry Lindsey individually and added a reservation of rights, which reads: "Larry Lindsey reserves all of his rights against the released parties for his own injuries."