PAUL A. BONIN, Judge.
|TIn this lawsuit Bonnie Palumbo claims that several attorneys negligently failed to prevent an earlier lawsuit for personal injuries from becoming abandoned due to non-prosecution for more than three years. This lawsuit was tried before a jury, and the trial judge submitted a special verdict form to the jury. The jury completed the special verdict, but its answers to the special written questions were indisputably inconsistent with each other. Rather than return the jury for further deliberations, the trial judge entered a judgment reflecting the jury’s inconsistent answers.
Ms. Palumbo as well as the attorney-defendants [1] and their insurer filed motions for new trial. The trial judge then granted a new trial and at the same time rendered a new judgment in favor of the attorney-defendants, dismissing Ms. Pa-lumbo’s suit with prejudice. Ms. Palumbo now appeals the dismissal of her lawsuit.
| aAfter our de novo review, we conclude that the trial judge, having not returned the jury for further deliberations, was correct in granting the motion for new trial, but erred in rendering judgment dismissing Ms. Palumbo’s case. Moreover, after our review of the disputed operative facts, we further conclude that we cannot render judgment on the basis of the record which has substantive conflicting testimony but are compelled to remand the matter for a new trial. Accordingly, we reverse the judgment dismissing Ms. Palumbo’s suit with prejudice and remand the matter for a new trial.
We explain our decision in greater detail below.
I
Ms. Palumbo initially sought damages from attorneys Steven H. Shapiro, William A. Pigg, Joseph Charles Bartels, the Law Office of Joseph Charles Bartels, Michael Idoyaga, James Yates, and Clayton Bank-ston, as well as their respective insurers. Ms. Palumbo contends that the defendants represented her at various times in con *926 nection with a personal injury lawsuit that arose out of a 1996 automobile accident. Ms. Palumbo’s personal injury claim was dismissed for abandonment in 2000. See La. C.C.P. art. 561 A(l). Shortly thereafter, she filed the present suit against the foregoing defendants, claiming entitlement to damages and arguing that the attorney-defendants committed malpractice by allowing her case to lapse through non-prosecution.
Before the case was submitted to the jury, several of the original defendants were dismissed. Mr. Bankston was dismissed from the case prior to trial on an I,.¡exception of peremption. Mr. Idoyaga and Mr. Yates were dismissed on the day of trial pursuant to an exception of no cause of action. Mr. Shapiro was dismissed from the case pursuant to a directed verdict at the close of plaintiffs case. None of these originally named defendants are before us on this appeal.
Ms. Palumbo’s malpractice suit proceeded to trial by jury. At trial, the remaining defendant-attorneys defended against Ms. Palumbo’s claims by arguing that, because they did not enter into an attorney-client relationship with her, they committed no legal malpractice. Ms. Palumbo claimed that she did have an attorney-client relationship with each of the attorney-defendants.
Upon the conclusion of the evidence, argument, and jury instruction, the trial judge submitted without objection a special verdict form under La. C.C.P. art. 1812 to the jury, which it completed as follows:
1.Do you find by a preponderance of the evidence that plaintiff, Bonnie Pa-lumbo, had an attorney-client relationship with defendant, William Pigg, on June 6, 2000?
Yes 2 No 10
(If you answered “Yes”, please proceed to question no. 2. If you answered “No”, then please proceed to question no. 4.)
2. Do you find by a preponderance of the evidence that defendant, William Pigg, bi'eached the standard of care applicable to lawyers in his representation of plaintiff, Bonnie Palumbo? Yes_No_
3. Do you find by a preponderance of evidence that defendant, William Pigg, caused or contributed to plaintiffs damages?
Yes_No_
4. Do you find by a preponderance of evidence that plaintiff, Bonnie Palum-bo, had an attorney-elient relationship with 14Joseph Charles Bartels and/or the Law Office of Joseph Bartels on June 6, 2000?
Yes 2 No 10
(If you answered “Yes”, please proceed to question no. 5. If you answered “No”, then please proceed to question no. 7.)
5. Do you find by a preponderance of the evidence that defendant(s), Joseph Charles Bartels and/or The Law Office of Joseph Bartels breached the standard of care applicable to lawyers in his representation of plaintiff, Bonnie Palumbo?
Yes 3 No 9
6. Do you find by a preponderance of the evidence that defendant(s) Joseph Charles Bartels and/or The Law Office of Joseph Bartels caused or contributed to plaintiffs damages?
Yes 3 No 9
7. Did Clayton Bankston cause or contribute to plaintiffs damages?
Yes 12 No_
8. Did Stephen Shapiro cause or contribute to plaintiffs damages?
*927 Yes 2 No 10
9. Did plaintiff, Bonnie Palumbo, cause or contribute to her own damages? Yes 11 No 1
10. What amount of money in damages do you find will adequately compensate plaintiff, Bonnie Palumbo?
$35,000
11. Please assign a percentage of fault, if any, do you assign to each of the following? (Your total should equal
100%).)
William Pigg 5%
Joseph Bartels/The Law Office of Joseph Bartels 10%
Clayton Bankston 40%
| sBonnie Palumbo 40%
Stephen Shapiro 5%
TOTAL 100%
Despite the inconsistent, even contradictory, answers of the jury, the attorneys polled the jury, and then the trial judge dismissed the jury. Ten days later, the trial court signed a judgment which virtually adopted that portion of the jury’s answers apportioning fault and granting judgment in favor of Ms. Palumbo, awarding her the full amount of damages of $35,000, without any reduction for the 40% fault which the jury apportioned to her. The judgment expressed that it was rendered under La. C.C.P. art. 1813 D. Notably, however, the judgment did not contain any decretal language and did not cast any defendant in judgment. See Input/Output Marine Systems, Inc. v. Wilson Greatbatch Technologies, Inc., 10-477, p. 13 (La.App. 5 Cir. 10/29/10), 52, So.3d 909, 916 (“A final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied.”)
Because of the jury’s inconsistent answers on the special verdict form, Ms. Palumbo and the remaining defendants filed competing motions for new trial. The relief which Ms. Palumbo sought from her motion was a new trial before another jury. The relief which the attorney-defendants sought from their motion was for the trial judge herself to resolve the inconsistencies by directing a judgment in accordance with the jury’s answers to the written interrogatories which exonerated them of liability and at the same time by disregarding the answers by which it | (¡apportioned fault to them. The attorney-defendants likened the questions about apportionment of fault to a general verdict which might be disregarded under La. C.C.P. art. 1813 D when it is inconsistent with answers to special interrogatories.
The trial court agreed with the attorney-defendants, granted their motion for new trial, and dismissed with prejudice the plaintiffs claims against the remaining defendants.
II
There is no question that in default of returning the jury for further consideration of its answers prior to its discharge the trial judge correctly granted a new trial. The issue which we resolve is whether the trial judge was correct in deciding the merits of the case by disregarding the jury’s apportionment of fault among the parties and non-parties as if such apportionment of fault was a general verdict. “When answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict ...” La. C.C.P. art. 1813 D (emphasis added). Because we conclude that the apportionment of percentages of fault by the jury is not a general verdict, the trial judge was not authorized to disregard the jury’s answers *928 on apportionment of fault in order to render judgment in favor of the attorney-defendants on the basis of the other answers to the written questions on the special verdict form.
We begin by discussing the differing aspects of general verdicts, general verdicts accompanied by answers to written interrogatories, and special verdicts.
|7The Code of Civil Procedure sets out no particular requirements for a general verdict unaccompanied by written interrogatories: “The laws of this state do not require a special form for a general verdict. The test of sufficiency of form for a verdict is whether it decides the issues in question.” O’Quinn v. Kansas City Southern Railroad, 442 So.2d 1317, 1319 (La.App. 3 Cir.1983). “The general verdict asks only for the jury’s conclusion, i.e., which party prevails and, if appropriate, the amount of the award.” 1 La. Civ. L. Treatise, Civil Procedure 11:12 (2d ed.). The “general verdict form instructs the jury to find for either the plaintiff or the defendant, but does not require that the jury inform the court of the basis for their decision.” 3 La. Prac. Civ. Proc. Article 1812 (2011 ed.).
Article 1813, however, controls the use of a general verdict along with the submission of written interrogatories. Under this procedure the jury is asked to expressly identify the prevailing party, and to inform the court of the basis for their decision. “The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict.” La. C.C.P. art. 1813 A. “The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict.” Id. (emphasis added). When the answers and the general verdict are consistent or harmonious, the court must direct entry of judgment upon the verdict and answers. See La. C.C.P. art. 1813 C.
|sBut, because an inconsistency can arise between whom the jury concludes is the prevailing party (general verdict) and its answers providing the basis for their decision, the Legislature provides the court with three options to resolve the inconsistency. “When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may [1] direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may [2] return the jury for further consideration of its answers and verdict, or may [3] order a new trial.” La. C.C.P. art. 1813 D. Thus, a court is authorized to disregard which party the jury identified as the prevailing party when the jury’s answers to interrogatories do not support its general verdict. Importantly, however, “[w]hen the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers or may order a new trial.” La. C.C.P. art. 1813 E (emphasis added).
Article 1812 controls the use of special verdicts. “The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.” La. C.C.P. art. 1812 A. When a special verdict form is used, the jury does not identify the prevailing party as it would with a general verdict. Here, the special verdict form substantially complies with the special findings sought in La. C.C.P. art. 1812 C:
C. In cases to recover damages for injury, death, or loss, the court at the *929 request of any party shall submit to the jury special written questions inquiring as to:
|fl(l) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
(2)(a) If appropriate under the facts adduced at trial, whether another party or nonparty, other than the person suffering injury, death, or loss, was at fault, and, if so:
(i) Whether such fault was a legal cause of the damages, and, if so:
(ii) The degree of such fault, expressed in percentage.
(b) For purposes of this Paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:
(i) A person who has obtained a release from liability from the person suffering injury, death, or loss.
(ii) A person who exists but whose identity is unknown.
(iii) A person who may be immune from suit because of immunity granted by statute.
(3) If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:
(a) Whether such negligence was a legal cause of the damages, and, if so:
(b) The degree of such negligence, expressed in percentage.
(4) The total amount of special damages and the total amount of general damages sustained as a result of the injury, death, or loss, expressed in dollars, and, if appropriate, the total amount of exemplary damages to be awarded.
| ipThe jury in this case was not asked on the verdict to identify the prevailing party, that is it was not requested to — and did not — return a general verdict. Once the jury returns its special verdicts, “[t]he court shall then enter judgment in conformity with the jury’s answers to these special questions and according to applicable law.” La. C.C.P. art. 1812 D. Article 1812 itself does not direct how the trial court is to resolve inconsistencies in the special verdicts. The Louisiana Supreme Court in Ferrell v. Fireman’s Fund Ins. Co. has instructed us, however, that when the answers on a special verdict form are inconsistent, we are to apply the provisions of La. C.C.P. art. 1813 E. See Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742. In Ferrell the jury in responses to a special verdict form found first that the plaintiffs negligence was not a legal or proximate cause of the accident, but nonetheless found him 30% at fault. Id. at 747. But under Article 1812 C the jury must attribute a percentage of fault to a party only if that party is negligent and that negligence was a legal or proximate cause of the injury. Id. Such inconsistent responses to special verdict interrogatories create an error of law. Id.
Here too, the jury’s special verdict reveals that the jury’s answers to interrogatories one, four, and eight conflict with the jury’s response to interrogatory eleven. The jury’s verdict is inconsistent because it assigns a percentage of fault to defendants who it also found had no attorney-client relationship with Palumbo.
|n Applying the mandate of Article 1813 E to the inconsistent findings, a court may either return the jury for further consideration, or may order a new trial. Ferrell, 650 So.2d at 747. A court, howev *930 er, “shall not direct the entry of judgment ...” Id.
Nonetheless, the attorney-defendants cite to Diez v. Schwegmann Giant Supermarkets, Inc., 94-1089 (La.App. 1 Cir. 6/23/95), 657 So.2d 1066, in support of their proposition that the jury’s apportionment of fault is akin to a general verdict and that we should proceed under Article 1813 D, which would allow for disregarding the fault apportionment. We, however, have previously rejected such a suggestion and instead have applied the Ferrell instruction, which we properly characterized as controlling, that we proceed under the provisions of Article 1813 E. See Stevens v. Scottsdale Insurance Company, 95-2347 (La.App. 4 Cir. 3/27/96), 672 So.2d 1031, 1033. In Stevens the jury inconsistently found that the plaintiff’s negligence was not a proximate of his injuries but apportioned 25% fault to him. Id. The trial judge rendered judgment and proportionally reduced the plaintiffs recovery. Id. We decided that the trial judge erred by directing an entry of judgment rather than either returning the jury for further consideration or ordering a new trial. Id.
As we have already observed, because here the trial judge did not return the jury for further deliberation, the only option available is to order a new trial. The trial judge committed an error of law in not granting Ms. Palumbo’s motion and ordering a new trial.
_bm
 The trial court’s failure to either return the jury for further consideration or to order a new trial creates a “fatal error” in the fact-finding process and we do not apply the manifest error standard of review to the trial court’s judgment. See Ferrell, 650 So.2d at 747, and Stevens, 672 So.2d at 1033. ‘Where one or more trial court legal errors interdict the fact-finding process ..., and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record to determine a preponderance of the evidence.” See Ferrell, 650 So.2d at 747. That is, we are authorized to exercise our constitutional authority to review facts and render judgment. See La. Const, art. V, § 10(B). But occasionally a preponderance of the evidence cannot be determined fairly from a cold record, such as when there is substantial testimonial conflict that can only be resolved depending upon the fact-finder’s view of the witnesses’ credibility. See, e.g., Diez, 657 So.2d at 1071. Thus, ordinarily we would proceed to render judgment on the record and remand for a new trial only when a view of the witnesses is essential to a fair resolution of conflicting evidence. See Estate of Cristadoro ex rel. Jones v. Gold-Kist, Inc., 01-0026, p. 28 (La.App. 4 Cir. 1/23/02), 819 So.2d 1034, 1050-1050.
After examining the record, we are convinced that we cannot conduct a de novo review, but must instead remand the matter for a new trial because a view of the witnesses is essential to a fair resolution of the conflicting evidence. Specifically, the remaining defendants, especially Mr. Pigg and Mr. Bartels, hold to the position that they cannot be liable for malpractice because they never entered into an attorney-client relationship with Palumbo.
| |3In order to prevail on a legal malpractice claim, the plaintiff must establish the following three elements: 1) an attorney-client relationship; 2) that the attorney was negligent in his representation of the client; and 3) that negligence caused the plaintiff loss. St. Paul Fire and Marine Ins. Co. v. GAB Robins North America, Inc., 08-0331, p. 8 (La.App. 4 Cir. 11/19/08) 999 So.2d 72, 77. The plaintiff bears the burden of proof with respect to each of these elements. Id. Failure to *931 prove one of these elements is fatal to the claim. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129. The existence of an attorney-client relationship turns largely on the client’s subjective belief that it exists. Francois v. Andry, 05-0888 (La.App. 4 Cir. 4/5/06), 930 So.2d 995. However, a person’s subjective belief that an attorney represents him must be reasonable under the circumstances. St Paul Fire and Marine Ins. Co., 08-0331, pp. 8-9, 999 So.2d at 77. The requirement that the belief be reasonable is an objective standard. “The claimant’s subjective belief does not establish an attorney-client relationship unless the lawyer reasonably induced that belief.” Ronald E. Mallen and Jeffrey M. Smith, 1 Legal Malpractice § 8:3 (2008 ed.). For this reason, an attorney client relationship cannot exist in the absence of any initial communication — verbal, written, or otherwise — between the attorney and the client. Lirette v. Roe, 93-0441 (La.App. 4 Cir. 1/13/94), 631 So.2d 503, 506.
At trial, Ms. Palumbo testified that she was of the opinion that she had entered into an attorney-client relationship with Mr. Pigg, who was at the time an employee of Mr. Bartels. In fact, Ms. Palumbo testified that she held this opinion | Muntil Mr. Bankston took over her case after a period of three to four months. Mr. Bank-ston worked out of, but was not employed by or affiliated with, the Law Office of Joseph Charles Bartels. Further, Ms. Pa-lumbo testified that Mr. Pigg contacted her, told her that he would be working on her case, and asked her to send him any medical records that she had. Ms. Palum-bo also noted that she had several conversations about her case with Mr. Pigg prior to Mr. Bankston taking over her file:
Q. And if I understand what you’re telling the jury, when that file went to Pigg Bartels, those lawyers, it was your
understanding that those were your lawyers. Is that a fair statement?
A. Yes, sir.
[[Image here]]
Q. Did those guys ever tell you — Mr. Pigg or Mr. Bartels — “we declined to take your case,” words to that effect?
A. No. The only thing they said to me was — after they had my case for, like, four months and they said they were working on my case. So they never declined my case because they were working on it. Then they said they had this big case that they were working on and that’s when they transferred my case to Mr. Bankston, who was somebody else in their firm. That was the only thing.
Mr. Pigg, on the other hand, testified that Palumbo’s case was referred to him by Mr. Shapiro. Mr. Pigg testified that he picked up the ease, reviewed it, and then went to Mr. Bartels to discuss its merits. Mr. Bartels and Mr. Pigg decided not to take the case, but instead to refer it to Mr. Bankston:
A. After my discussion with Mr. Bartels as to whether or not we would undertake representation of Ms. Palum-bo, it was suggested that I run that case, meaning the Palumbo case and one of the other cases by Mr. Bankston to see if he wanted the case, either of the cases. I did so.
1 ifiMr. Bankston indicated that he wanted both of those cases. At that time, I got on the telephone with both clients, one after the other. I spoke with Ms. Palumbo. I told her that we declined to undertake the representation, that there was a lawyer working in our office who was interested and did she want to speak with him. I passed the phone to Clayton Bankston.
I overheard Mr. Bankston’s side of the conversation. It was clear that the *932 conversation was getting underway. It sounded like he had things under control. I left the office or the conference room, actually.
Clearly, the versions of events put forward by Ms. Palumbo and Mr. Pigg differ greatly. It is equally clear that these sharp differences cannot be resolved adequately with nothing save a cold transcript. Our review of the record convinces us that the differing factual accounts put forward by the parties cannot be reconciled absent a viewing of the witnesses.
Accordingly, we decline to render judgment on the record before us and instead remand this matter to the trial court for a new trial.
DECREE
We reverse the trial court’s judgment in favor of the defendants, dismissing Bonnie Palumbo’s suit with prejudice. We remand the matter for a new trial. Costs of this appeal to be taxed at the time of the rendering of the final judgment.
REVERSED AND REMANDED

. The attorney-defendants are William A. Pigg, Joseph Charles Bartels, the Law Office of Joseph Charles Bartels. Their insurer is Westport Insurance Company.