STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 1209

THEOPHOLIA THOMAS

VERSUS

BNSF RAILWAY COMPANY

Judgment Rendered: **AUG 0 6 2024**

* * * * *

On Appeal from the
16th Judicial District Court
Parish of St. Mary, State of Louisiana
Trial Court No. 131516

The Honorable Keith R.J. Comeaux, Judge Presiding

* * * * *

Timothy C. Gaarder                    Attorneys for Plaintiff-Appellee,
John S. Carroll                       Theopholia Thomas
Kansas City, Missouri

Edward J. Walters, Jr.
Baton Rouge, Louisiana

Kevin M. Dills                        Attorneys for Defendant-Appellant,
Robert D. Felder                      BNSF Railway Company
Jami Lacour Ishee
Lafayette, Louisiana

Thomas M. Flanagan
Anders F. Holmgren
New Orleans, Louisiana

* * * * *

BEFORE: WELCH, PENZATO, WOLFE, MILLER, AND STROMBERG, JJ.

Miller, J. dissents + assigns reasons
Welch, J. dissents with reasons assigned

**WOLFE, J.**

This suspensive appeal arises out of a collision between a garbage truck and a train at a railroad crossing in Baldwin, Louisiana. Following a jury verdict awarding $8,307,050.00 in damages to the garbage truck driver, the railroad company appeals and raises issues concerning liability, an inconsistent verdict regarding the allocation of fault and causation, and an excessive quantum award for general damages. For the following reasons, we vacate and remand for a new trial.

## FACTS

On September 16, 2016, at approximately 11:35 a.m., Theopholia Thomas[1] was driving a garbage truck on a collection route for Pelican Waste & Debris, L.L.C., in the Town of Baldwin. As Mr. Thomas drove in a southwesterly direction on Railroad Avenue, which runs parallel with multiple railroad tracks that are owned and maintained by different railroad companies, he stopped before turning off of Railroad Avenue onto Lockley Street.[2] Each of the two employees working from the back of the garbage truck, known as "hoppers," jumped off of the truck to empty garbage cans located near the intersection. One of the hoppers walked across the railroad crossing to access the few houses located on the other side of the dead-end Lockley Street. The weather was rainy, but there were no visual obstructions blocking the view of oncoming trains in either direction along the railroad tracks.

Mr. Thomas did not see or hear any oncoming trains as he proceeded to turn right onto Lockley Street in order to access the Lockley Street crossing over the railroad tracks. It is undisputed that this particular railroad crossing was maintained

---

[1] The plaintiff's name is spelled and referenced several ways throughout the record, including "Theo Thomas." We note the correct spelling is "Theopholia Thomas."

[2] Both streets are public and are maintained by the town, and the crossings are owned and maintained by the various railroad companies.

by the BNSF Railway Company ("BNSF").[3] The wooden plank crossing was marked with a standard railroad cross-buck sign that warned of the railroad crossing, along with a stop sign mounted on the same pole. Mr. Thomas admitted that he did not stop at the stop sign after turning onto Lockley Street, because he had stopped prior to turning. He denied seeing or hearing any oncoming trains coming from the north side of the Lockley Street crossing. There was testimony about a blind spot due to the side mirrors on the garbage truck.

When Mr. Thomas entered the Lockley Street railroad crossing, his turn was too wide, which resulted in the left front tire of the garbage truck dropping off the wooden planks on the south side of the crossing. The tire was then stuck between the railroad tracks. Mr. Thomas immediately began a process of reversing and pulling forward to maneuver the garbage truck fully up onto the crossing. Once he was successful in backing out of the area where the garbage truck's tire was stuck, he realigned all four truck tires onto the crossing, and he began to pull forward to go across. It was at that point that Mr. Thomas saw the oncoming BNSF train, which was blaring its horn and bearing down on the Lockley Street crossing at approximately 36 miles per hour. Mr. Thomas made a quick decision to accelerate the garbage truck in an attempt to clear the train's path, but before Mr. Thomas had cleared the crossing, the BNSF train collided with the rear portion of the garbage truck. The truck was knocked onto its left side, spilling garbage everywhere. The garbage truck was pushed down the railroad tracks until the BNSF train came to a stop. Mr. Thomas survived the collision, but was injured.[4]

---

[3] While there are multiple sets of railroad tracks at the Lockley Street crossing, this case involves only the first wooden crossing that Mr. Thomas encountered, which was owned and maintained by BNSF.

[4] Mr. Thomas has not been able to return to work since the accident. His most significant injury required a two-level fusion surgery to stabilize his low back. Mr. Thomas suffered surgical complications, including a spinal fluid leak that required two more surgeries, infections for six months post-op due to an open wound at the surgical site, and residual radiating leg pain that may require future back surgeries, as well as spinal cord stimulator treatment. Mr. Thomas also suffers

As a result of the accident and injuries, Mr. Thomas filed suit against BNSF.[5] Mr. Thomas alleged that the crossing was not properly maintained by BNSF. According to several witnesses and exhibits at trial, the crossing was narrower than the street and was, therefore, in violation of industry standards, as well as BNSF's internal standards, which required railroad crossings to be at least one foot wider than the traveled roadway. Following a six-day jury trial on the merits in May of 2022, the jury was given a special verdict form composed of seven interrogatories. The jury returned the verdict form with responses to the interrogatories as follows:

**(1) Was BNSF Railway Company negligent?**

**Yes** __X__          **No** _____
If the answer to question 1 is yes, proceed to question 2.
If the answer to question 1 is no, sign at the end and return to the courtroom.

**(2) Was the negligence of BNSF Railway Company a proximate cause of the accident?**

**Yes** __X__          **No** _____
If the answer to question 2 is yes, proceed to question 3.
If the answer to question 2 is no, sign at the end and return to the courtroom.

**(3) Was Theo Thomas negligent?**

**Yes** __X__          **No** _____
If the answer to question 3 is yes, proceed to question 4.
If the answer to question 3 is no, proceed to question 5.

**(4) Was the negligence of Theo Thomas a proximate cause of the accident?**

**Yes** _____          **No** __X__
Proceed to question 5.

**(5) Please state the percentage of negligence, if any[,] attributable to the below parties.**

---

from flashbacks regarding the accident and depression related to his chronic pain and life changes since the accident.

[5] Mr. Thomas initially brought suit individually and on behalf of his daughter, Azyria O. Thomas. His daughter's loss of consortium claim was later dismissed. All other defendants, including the Town of Baldwin, Chris Gary and Sir Johnson (BNSF employees), and Pelican Waste & Debris, L.L.C., were dismissed prior to trial.

**(Note that the total of your percentage must be 100%)**

**BNSF Railway Company:** ___85___ %

**Theo Thomas:** ___15___ %

**Proceed to question 6.**

(6) **Did Theo Thomas suffer any damage as a result of the accident on September 16, 2016?**

Yes __X__        No _____

If the answer to question 6 is yes, proceed to question 7.
If the answer to question 6 is no, sign at the end and return to the courtroom.

(7) **Without deducting any sums for the percentage of negligence, if any, which you have assigned above to Theo Thomas, please state what sum of money, if any, would reasonably and fairly compensate Theo Thomas for the following:**

| | |
|---|---|
| **Past Lost Wages:** | $ 330,000.00 |
| **Future Lost Wages:** | $ 491,000.00 |
| **Past Medical Expenses:** | $ 112,000.00 |
| **Future Medical Expenses:** | $ 840,000.00 |
| **Past and Future Pain and Suffering:** | $ 5,000,000.00 |
| **Past, Present and Future Loss of Enjoyment of Life:** | $ 3,000,000.00 |

Franklin, Louisiana, this __31st__ day of May, 2022

___/s/ Debra Goulas_____
Jury Foreperson

BNSF immediately objected to the jury verdict, maintaining that the verdict should be set aside as inconsistent and a new trial ordered pursuant to La. Code Civ. P. art. 1813.[6] BNSF pointed out that the jury's answers to questions 4 and 5 were

_____

[6] Louisiana Code of Civil Procedure article 1813 provides, in pertinent part, with emphasis added:

> E. *When the answers are inconsistent* with each other and one or more is likewise inconsistent with the general verdict, *the court shall not direct the entry of judgment*

5

inherently inconsistent in that the jury found Mr. Thomas to be negligent, yet the negligence was not a proximate cause of the accident, and then assigned Mr. Thomas 15% of the fault for the accident. The trial court noted "[i]t look[ed] like that to [the court,] too" and stated that "the inconsistency" could be handled in a post-trial motion.

After the trial, BNSF filed a formal written objection to the inconsistent jury verdict and entry of any judgment on that verdict. Mr. Thomas opposed. During the hearing that followed, Mr. Thomas's counsel indicated that Mr. Thomas was willing to accept the 15% allocation of fault to him and argued that the jury clearly found that BNSF was 85% at fault for the accident. The trial court subsequently denied BNSF's objection to the jury verdict. On August 30, 2022, the trial court signed a final judgment in accordance with the jury verdict in favor of Mr. Thomas in the amount of $8,307,050.00, that included the 15% fault allocated to Mr. Thomas. BNSF moved for a Judgment Notwithstanding the Verdict and, alternatively, moved for a new trial, which Mr. Thomas opposed. The trial court issued written reasons for judgment and denied BNSF's motions.

BNSF then filed this suspensive appeal, assigning error to the trial court's entry of a judgment when there was an inconsistency in the jury's findings. BNSF also assigns error to entry of a judgment against it in the absence of evidence of a breach of duty and in the absence of legal causation. Essentially, BNSF argues that Mr. Thomas was the sole party at fault for his failure to stop, look, and listen from a position where he had a clear view of the approaching train that had the right of way; he negligently made a wide turn that caused the garbage truck tire to become stuck; and then he panicked and attempted to beat the oncoming train instead of backing

_but may return the jury for further consideration of its answers or may order a new trial._

6

off of the crossing to allow the train to pass. Additionally, BNSF maintains that the general damage award is excessive and a clear abuse of discretion.[7]

Because it affects our standard of review, we first consider the issue raised by BNSF regarding the trial court's commission of a legal error by entering judgment despite the jury's having returned irreconcilably inconsistent responses to the interrogatories posed by the jury verdict form. See La. Code Civ. P. arts. 1812 and 1813. See also **Oddo v. Asbestos Corp. Ltd.**, 2014-0004 (La. App. 4th Cir. 8/20/15), 173 So.3d 1192, 1200, writ denied, 2015-1712 (La. 11/6/15), 180 So.3d 308.

## LAW AND ANALYSIS

Verdict forms are governed by La. Code Civ. P. arts. 1812 and 1813. Article 1812 addresses the form and content of certain special verdict forms, with a written finding upon each issue of fact. Article 1813 covers general verdict forms accompanied by answers to written interrogatories upon one or more issues of fact. When the general verdict and the answers are harmonious, the trial court shall direct the entry of the appropriate judgment upon the verdict and answers. La. Code Civ. P. art. 1813(C). When the answers are consistent with each other, but one or more is inconsistent with the general verdict, the trial court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration, or may order a new trial. La. Code Civ. P. art. 1813(D). However, when the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment, but may return the jury for further consideration of its answers or may order a new trial. La. Code Civ. P. art. 1813(E).

---

[7] In an alternative assignment of error, BNSF argues that if the liability is reversed, then the award of costs against BNSF should be vacated or modified.

7

Reversible error may occur when a jury verdict form or interrogatories are so misleading or confusing that a jury is precluded from reaching a verdict based on correct law and facts. See **Georgia-Pacific, LLC v. Dresser-Rand Company**, 2015-2002 (La. App. 1st Cir. 10/31/16), 207 So.3d 1131, 1137, writ denied, 2016-02114 (La. 1/13/17), 215 So.3d 248. Appellate court review extends to laws and facts. See La. Const. art. V, sec. 10(B). We find that the interrogatories concerning the negligence, proximate cause of the accident, and the percentage of fault, if any, to be allocated to Mr. Thomas were confusing in that the jury was not clearly instructed as to the allocation of fault if the negligence of Mr. Thomas was found not to be a proximate cause of the accident. When a jury gives inherently inconsistent responses to questions on a verdict form, the trial court should return the jury for further consideration or may order a new trial. See La. Code Civ. P. art. 1813(E); **Ferrell v. Fireman's Fund Ins. Co.**, 94-1252 (La. 2/20/95), 650 So.2d 742, 747. The trial court followed neither prescribed course in this case, even though the trial court recognized the inconsistency in the jury's findings after BNSF objected. The trial court again acknowledged the inconsistency in its written reasons for judgment: "This finding of 15% fault [answer to question number five] is inconsistent with question number four where the jury found that the negligence of [Mr.] Thomas was not the proximate cause of the accident."

Further, La. Code Civ. P. art. 1812(C) directs the jury to attribute a percentage of fault to a party only *after* it has determined that such party was negligent *and* that this negligence was a legal or proximate cause of the accident. **Ferrell**, 650 So.2d at 747. However, the jury in this case found that Mr. Thomas was negligent and 15% at fault in the accident, but that his negligence was not a legal or proximate cause of the accident. When a jury finds a plaintiff to have been negligent but not a proximate cause of the accident, and still apportions a percentage of fault to the plaintiff, the findings are inherently inconsistent and are irreconcilable. The only

8

two options available to a trial court when the jury verdict is internally inconsistent is to return the jury for further consideration or order a new trial. La. Code Civ. P. art. 1813(E). The fact that Mr. Thomas was willing to accept the 15% fault apportioned to him is not relevant in this situation, since the jury did not find that his negligence was a proximate cause of the accident. The two different responses by the jury as to negligence and legal causation directly conflict with one another. See **Oddo**, 173 So.3d at 1202.

Once the jury found that Mr. Thomas's negligence *was not* a proximate cause of the accident in response to interrogatory number four, there could be no percentage of fault allocated to Mr. Thomas in response to interrogatory number five. Accordingly, the jury should have been directed to stop answering questions with respect to Mr. Thomas's percentage of fault after they answered "No" to interrogatory number four. The directions accompanying interrogatory number four, however, only instructed the jury to proceed to interrogatory number five, concerning the percentages of "negligence" attributable to *both* parties. The instruction was incorrect and undoubtedly misled the jury that had already found both parties were negligent, but that both parties' negligence was not the proximate cause of the accident. See **Oddo**, 173 So.3d at 1203. The incorrect instructions accompanying the jury's interrogatories certainly contributed to the inconsistency in the jury's answers with regard to Mr. Thomas.

We find that the trial court's failure to follow Article 1813(E) under these circumstances constitutes reversible error. See **Diez v. Schwegmann Giant Supermarkets, Inc.**, 94-1089 (La. App. 1st Cir. 6/23/95), 657 So.2d 1066, 1069, writ denied, 95-1883 (La. 11/17/95), 663 So.2d 720. As we previously stated, under La. Code Civ. P. art. 1812(C), the jury may only attribute a percentage of fault to a party or nonparty that is negligent if its negligence was a legal or proximate cause of the accident. **Oddo**, 173 So.3d at 1204, citing **Ferrell**, 650 So.2d at 747, and

9

**Stevens v. Scottsdale Ins. Co.**, 95-2347 (La. App. 4th Cir. 3/27/96), 672 So.2d 1031, 1033. Without question, the inconsistency in the jury's verdict made it impossible for the trial court to "enter judgment in conformity with the jury's answers ... and according to applicable law." See La. Code Civ. P. art. 1812(D). Pursuant to La. Code Civ. P. art. 1813(E), the inconsistency in the jury's verdict required the trial court to order a new trial since it did not follow the only other option of sending the jury back to reconsider its answers. See **Diez**, 657 So.2d at 1069. See also **Palumbo v. Shapiro**, 2011-0769 (La. App. 4th Cir. 12/14/11), 81 So.3d 923, 930, writ denied, 2012-0140 (La. 3/23/12), 85 So.3d 93. Accordingly, the trial court's denial of BNSF's motion for new trial was legal error.

The trial court's legal error mandates that this court either remand the matter for a new trial, or alternatively, conduct a *de novo* review of the record on appeal. When faced with a legal error that has tainted a jury verdict, the general rule is that where the record is "otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence." **Evans v. Lungrin**, 97-0541 (La. 2/6/98), 708 So.2d 731, 735. See also **Oddo**, 173 So.3d at 1205. In this case, however, after examining the record, we have determined that a preponderance of the evidence cannot be determined fairly from a cold record. There is substantial testimonial conflict that can only be resolved depending upon the fact-finder's view of the witnesses' credibility.[8] In such cases, the appellate court may conclude that the appropriate remedy is to remand for a new

---

[8] For instance, while experts testified about the requirements that railroad crossings be at least one foot wider than the traveled roadway surface, motorists are required to stop, look, and listen, as well as yield the right of way to trains before entering railroad crossings. Testimony conflicted about the facts surrounding the breach of these duties, whether the train's horn was blaring as it approached the crossing, the timing of when the truck and train were visible to each other, and whether Mr. Thomas could have backed up completely out of harm's way prior to the collision. Likewise, the extent and severity of Mr. Thomas's injuries, and the possibility of future surgeries, along with his ability to return to work, all require credibility determinations that are not possible from a review of a cold record.

trial. See **Diez**, 657 So.2d at 1070-1071. Therefore, we conclude that the trial court's entry of judgment on the inconsistent jury verdict and denial of BNSF's motion for new trial were reversible errors, and we must vacate the judgment. We are convinced that the interests of justice would be served best by remanding for a new trial. See **Id**. at 1072.

## CONCLUSION

For the reasons expressed, we vacate the judgment of the trial court and remand this case for a new trial consistent with this opinion.

**JUDGMENT VACATED AND REMANDED.**

STATE OF LOUISIANA

FIRST CIRCUIT

COURT OF APPEAL

DOCKET NUMBER

THEOPHOLIA THOMAS

VERSUS

BNSF RAILWAY COMPANY

2023 CA 1209

AUG 06 2024

**MILLER, J., dissenting.**

I respectfully disagree with the majority's opinion herein.

Louisiana Code of Civil Procedure article 1813 provides that when the jury's answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but *may* return the jury for further consideration of its answers or *may* order a new trial. La. C.C.P. art. 1813(E).

According to the jury verdict form, the jury found that Mr. Thomas was negligent (Question Three), but that his negligence was not a proximate cause of the accident (Question Four), yet attributed 15% "negligence" to Mr. Thomas and 85% to BNSF (Question Five). Recognizing this inconsistency, the trial court did not direct entry of the inconsistent verdict. Instead, at a hearing following BNSF's written objection to the jury verdict, Mr. Thomas indicated that he was willing to accept the allocation of 15% fault and a final judgment was then entered allocating 15% fault to Mr. Thomas and 85% fault to BNSF. This error thus inured to the benefit of BNSF.

The court resolved the inconsistency in the verdict by accepting Mr. Thomas's waiver. The practical solution employed herein by the trial court, i.e., resolving the inconsistencies in the jury verdict form, then entering a judgment, distinguishes this case from Ferrell v. Fireman's Fund Insurance Company, 94-1252 (La. 2/20/95), 650 So. 2d 742, 747, Oddo v. Asbestos Corporation Ltd., 2014-0004 (La. App. 4th Cir. 8/20/15), 173 So. 3d 1192, 1201-1202, writ denied, 2015-1712 (La. 11/6/15),

1

180 So. 3d 308, Diez v. Schwegmann Giant Supermarkets, Inc., 94-1089 (La. App. 1st Cir. 6/23/95), 657 So. 2d 1066, 1068-1069, writ denied, 95-1883 (La. 11/17/95), 663 So. 2d 720, and Palumbo v. Shapiro, 2011-0769 (La. App. 4th Cir. 12/14/11), 81 So. 3d 923, 929-930, writ denied, 2012-0140 (La. 3/23/12), 85 So. 3d 93. In each of these cited cases, the trial court entered judgment but took no remedial action before entering the jury's inconsistent verdict.

I disagree with the majority's analysis to the extent that it renders the permissive "may" in La. C.C.P. art. 1813(E) mandatory. The "cardinal rule of statutory interpretation is that the word 'may' is permissive." Pierce Foundations, Inc. v. Jaroy Construction, Inc., 2015-0785 (La. 5/3/16), 190 So. 3d 298, 304. Because of the permissive language of La. C.C.P. art. 1813(E), I believe the trial court had the option to resolve any inconsistencies post trial without returning the matter to the jury for further consideration of its answers or ordering a new trial.

Consistent with this problem-solving approach, I find the reasons set forth by the trial court to be particularly persuasive:

> This Court is troubled with the defendant being able to claim an error on the part of the Court that benefits the defendant and ask for a new trial as a result of that error. The plaintiff is willing to accept the error and accept the apportionment of 15% fault on Mr. Thomas's part; therefore, the Court will enter judgment as requested by the plaintiff and deny the defendant's objection to the entry of the judgment. The Court distinguishes both the Ferrell and the Stevens case[s] … in that in each of those cases the aggrieved party was requesting an increase of the award based on the percentage of fault allocated to it. In this particular case, the aggrieved party is the benefactor of the error and is now requesting a new trial even though it is receiving the benefit of the reduction of the judgment by the percentage of fault. Should this Court want to enter 100% fault on the part of BNSF, then BNSF could object due to the inconsistency. However, BNSF is receiving the lesser of the two amounts of fault that can be interpreted by the verdict form, and should not be able to complain and receive a new trial based on an error that benefits them. Therefore, the Court will deny the objection to the entry of the judgment by BNSF and enter a judgment in compliance with these Reasons.

In my view, the remedial actions taken by the trial court are consistent with principals of judicial economy and not violative of La. C.C.P. art. 1813(E). On

2

appeal, the parties do not request a new trial and should not be awarded one. Any right to complain about the allocation of fault or the amount of the damage award is preserved for appellate review and can be addressed by this court.

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2023 CA 1209

THOEPHOLIA THOMAS INDIVIDUALY AND ON BEHALF OF
DAUGHTER AZYRIA O. THOMAS

VERSUS

*JLW*    BNSF RAILWAY COMPANY, ET AL.

AUG 0 6 2024

**WELCH, J., dissenting.**

I respectfully disagree with the majority opinion. I do not believe the jury's verdict was inconsistent or that it should be set aside. It is well-settled that a jury's verdict based on a jury verdict form should not be set aside unless the form is so inadequate that the jury is precluded from reaching a verdict based on correct law and facts. **Thomas v. Department of Wildlife & Fisheries**, 2018-0869 (La. App. 1st Cir. 10/2/19), 289 So.3d 579, 593, writ denied, 2019-01767 (La. 1/14/20), 291 So.3d 687. In this case, the jury verdict form and the interrogatories that followed were not inadequate, confusing, or misleading. The jury was asked whether Mr. Thomas was negligent, and if so, they were to determine whether his negligence was a proximate cause of the accident. The jury was then instructed to state the percentage of negligence attributable to the parties. The jury responded to these interrogatories by finding that Mr. Thomas was negligent, that he was negligent in the amount of 15%, but that his negligence (of 15%) was not a cause of the accident. Thus, the jury interrogatories were not misleading, confusing, or inadequate such that the jury was prevented from dispensing justice or from reaching a verdict based on the law and the facts.

In addition, with regard to the jury's award of damages in the amount of $5,000,000 for past and future pain and suffering and $3,000,000 for past and future loss of enjoyment of life, based on my review of the record and the particular facts of this case, *i.e.* Mr. Thomas's particular injuries and their effect on his life (permanent, life-altering physical and mental injuries with daily physical and emotional pain) coupled with a study of prior

awards in truly similar cases, I do not believe that the jury abused its discretion. <u>See</u> **Barber Brothers Contracting Company, LLC v. Capitol City Produce Company, LLC**, 2023-00788 (La. 6/28/24), ___ So.3d ___, ___, 2024 WL 3218636 *25-26; <u>see also</u> **Marable v. Empire Truck Sales of Louisiana LLC**, 2016-0876 (La. App. 4th Cir. 6/23/17), 221 So.3d 880 (affirming general damage award of $40,000,000 for the plaintiff, who was 64 years-old and suffered from a disabling brain injury and other serious injuries as a result of the accident); **Soileau v. Smith True Value and Rental**, 2011-1594 (La. App. 3rd Cir. 1/30/14), 130 So.3d 1060 (affirming $7,500,000 in general damages after a loader detached from a trailer and fell on the plaintiff's leg and the plaintiff suffered from daily pain requiring pain and sleep medication); and **Shephard v. AIX Entergy, Inc.**, 51,965 (La. App. 2nd Cir. 5/23/18), 249 So.3d 194, 210 (affirming $7,500,000 where plaintiff sustained burns to 33-49% of his body and returned to work after his injuries).

Therefore, I would affirm the judgment of the trial court.